Thomas M. Daniel, Esq.
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561
(907) 276-3108 (Facsimile)

Attorneys for Defendant FedEx Kinko's Office and Print Services, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DWIGHT GREENE,

　　　　　　　　Plaintiff,

v.

FEDEX KINKO'S OFFICE AND PRINT
SERVICES, INC.,

　　　　　　　　Defendant.

Case No. 3:04-cv-0160-RRB

## REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

　　　　Defendant FedEx Kinko's Office and Print Services, Inc. ("Kinko's") has moved for summary judgment because Plaintiff Dwight Greene ("Greene") has produced no evidence that he was terminated for a discriminatory or retaliatory reason. In opposition, Greene offers a series of unconnected facts, none of which challenge the underlying reason that he was terminated – that he had low MSM scores. Because Greene has offered no evidence that Kinko's terminated him for a discriminatory or retaliatory reason, Kinko's is entitled to summary judgment.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT    - 1 -    [54249-0001-000000/AA060060.011]

## I.     There Is No Dispute Concerning the Applicable Legal Standards.

Greene agrees with Kinko's that Alaska law has adopted the three-part burden shifting (the "pretext" analysis) framework applied by the federal courts in Title VII cases when analyzing retaliation and discrimination cases under AS 18.80.  Plaintiff's Opposition, at 5-6; *see also, Era Aviation, Inc. v. Lindfors*, 17 P.3d 40, 45-47 (Alaska 2000); *Veco, Inc. v. Rosebrock*, 970 P.2d 906, 918-19 (Alaska 1999) (endorsing three-part "pretext" test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257 (1981)).

Once the plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant, who must rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory or non-retaliatory reason for its actions.  *Lindfors*, 17 P.3d at 45 ("the burden of production, but not persuasion, shifts to the employer"); *Veco*, 970 P.2d at 919 (quoting *Miller*, 797 F.2d at 731); *McDonnell Douglas*, 411 U.S. at 802-03; *Burdine*, 450 U.S. at 253-54.  Once the nondiscriminatory or non-retaliatory reason is articulated by the defendant, the burden then shifts back to the plaintiff to prove that the defendant's articulated reasons are a mere pretext for what was, in fact, a discriminatory or retaliatory action.  *Lindfors*, 17 P.3d at 45; *Veco*, 970 P.2d at 919; *McDonnell Douglas*, 411 U.S. at 802-03; *Burdine*, 450 U.S. at 253-54.

Greene also does not challenge that a plaintiff's burden of showing pretext depends on whether the plaintiff is relying on circumstantial or direct evidence. *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).  If a

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

plaintiff is able to show direct evidence of discriminatory animus, then the plaintiff only needs to show "very little" evidence of pretext to demonstrate a genuine issue of material fact. *Id.* "'[D]irect' evidence refers only to evidence (such as racist or sexist statements) that proves the fact of discriminatory animus without the need for substantial inference." *Id.* at 1096, n.8. If a plaintiff is relying on circumstantial evidence of discrimination to show pretext, then the plaintiff must produce "specific and substantial" evidence to defeat an employer's motion for summary judgment. *Id.*

**II.  Greene Cannot Present a Prima Facie Case of Retaliation Because Greene has Pointed to Nothing Which Rebuts Kinko's Evidence that the Decision to Terminate Greene had Already Been Made at the Time Greene Submitted His Complaint.**

In its Motion for Summary Judgment, Kinko's presented evidence that the decision to terminate Greene had already been made at the time that Greene submitted his discrimination complaint. Motion for Summary Judgment, at 40-43. Kuhn had clearly told Greene that he would be terminated if his MSM score did not improve to a specific standard, Greene knew that his scores were too low to continue his employment and Kuhn was planning a trip to Alaska to terminate him for this reason. Then, Greene made a discrimination complaint.

As Kinko's has already pointed out, Greene cannot prove a causal connection between his discrimination complaint and his termination because Kuhn was planning to terminate Greene prior to the complaint. *Newbold v. Wisconsin State Pub. Defender*, 310 F.3d 1013, 1016 n.1 (7th Cir. 2002) (where decision to terminate plaintiff occurred before plaintiff's complaint, there could be no finding of illegal retaliation); *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87,

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

95 (2[d] Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").  Obviously, Greene could not have been terminated in retaliation for making a discrimination complaint if Kuhn had decided to terminate him prior to his complaint.  Instead, the only reason that Kinko's continued to employ Greene for another six months was because Greene made a discrimination complaint.   Because Greene has not rebutted Kinko's evidence that the decision to terminate him was made prior to his complaint of discrimination he cannot possibly show a causal connection, or therefore, make a prima facie case.  Summary judgment on Greene's retaliation claim is proper.

III.    **Greene has Not Pointed to Any Direct Evidence of Discrimination or Retaliation.**

   A.    **There is no direct evidence of racial discriminatory animus.**

   In order to show direct evidence of discrimination under the applicable legal framework, Greene must point to evidence which "proves the fact of discriminatory animus without the need for substantial inference."  It appears that Greene contends that the only direct evidence he has proffered is the "monkey mimicry" incident and Kuhn's order to remove a photograph of the Reverend Dr. Martin Luther King Jr.[1]

---

[1] Greene does not identify which evidence he believes is direct evidence until the conclusion of his brief, which states:

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

1.    **The "monkey mimicry" incident does not constitute direct evidence of race discrimination because it requires an inferential leap to find any racial animus.**

The underlying allegation of the "monkey mimicry" incident is as follows. A frustrated customer told Greene that Kinko's was being run like a monkey.[2] Greene told Kuhn about the incident and Kuhn allegedly responded by putting his hands under his arms and making some monkey sounds. Greene makes an inference that Kuhn mimicked a monkey because he was racist rather than as a joke related to Greene's story of the frustrated customer. Greene's contention that Kuhn's action was racist involves an inferential leap that Kuhn acted like a monkey <u>because</u> he was a racist. Greene makes this leap because he believes Kuhn had treated him unfairly. Indeed, because Greene makes this inferential leap, it cannot serve as the basis of finding direct evidence of discrimination.

---

Plaintiff has provided direct evidence of discriminatory animus in the form of the "monkey mimicry" incident and the Martin Luther King photo incident, meeting the minimal requirements for establishing a genuine issue of material fact. Little or no inference is required to establish animus from those events, but plaintiff has nonetheless provided substantial and specific evidence of discrimination and retaliation . . . .

Plaintiff's Opposition, at 41.

[2] Greene does not believe that this customer's statement was racist in any way.

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

2. **Kuhn's alleged order to take down a picture of Martin Luther King Jr. from his Kinko's office does not constitute direct evidence of race discrimination.**

Greene also alleges that Kuhn telling him to take down a picture of Dr. Martin Luther King Jr. from Greene's office at the Northern Lights Branch constitutes evidence of discrimination. Greene argues that this is evidence of Kuhn's racial hostility even though, by Greene's own admission, Kuhn told him to take down the picture because of its "religious connotations." Interpreting Kuhn's order as evidence of racial animus requires an enormous inferential leap, and therefore cannot serve as a basis of finding direct evidence. Rather, Kuhn's statement that the reason that the picture should be removed was because of "religious connotations" negates any such argument.[3] One must infer that Kuhn's allegedly stated reason for removing the Martin Luther King picture was a lie and Kuhn was not concerned about the religious connotations of having a prominent religious figure displayed on Greene's wall.[4]

_____

[3] As explained below, it is not religious discrimination for an employer to not allow the display of religious materials in the workplace.

[4] Kuhn was apparently very sensitive to having his managers portray a religiously neutral image in the workplace. For example, Kuhn told Greene's wife (who worked for Greene as an assistant manager) to "remove artwork from her office depicting a dove and rainbow because of its religious overtones." Plaintiff's Opposition, Exhibit 7, at 7.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

**B.      There is no direct evidence of religious discriminatory animus.**

Again, while it is not entirely clear, it appears as if Greene might be arguing that Kuhn's order to remove the pictures of Martin Luther King and the names of God in Hebrew constitute direct evidence.  Greene alleges that Kuhn explained that the pictures should be removed because they had "religious connotations."  This does not constitute direct evidence of discriminatory animus because of religion.[5]

---

[5] There is obviously no argument that Kuhn's order to remove the pictures constituted a failure to accommodate Greene's religious beliefs.  In a failure to accommodate case, a plaintiff must prove that he or she has a bona fide religious belief that conflicts with an employment requirement and there is no evidence that Greene's religious beliefs required him to display either a picture of Dr. King or the names of God in the workplace.  *See Wilson v. U.S. West Communications*, 58 F.3d 1337, 1341 (8th Cir. 1995) (affirming judgment against employee because, in part, there was no evidence that the employee's religious beliefs <u>required</u> the employee to wear anti-abortion paraphernalia in the workplace).  Second, Title VII does not require an employer to allow employees to depict religious messages in the workplace where it might cause co-worker discomfort.  *Id.* at 1341-42; *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 607 (9th Cir. 2004) (holding that employer could properly promote its sexual orientation diversity program and prohibit employee from displaying anti-homosexual scripture in his cubical).  Third, a necessary showing in a failure to accommodate case requires an adverse employment action as a result of the employee's failure to comply with the employer's demands.  *Opuku-Boateng v. State of California*, 95 F.3d 1461, 1467 (9th Cir. 1990).  Because Greene removed the religious displays from his office, he cannot show that he was terminated because he failed to remove them.

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

1.    **Kinko's has a legitimate interest in ensuring that non-religious employees are not intimidated by overtly religious management.**

Even if Greene's allegation were true, Kuhn's concern would be legitimate.  Greene was in charge of the entire Northern Lights Branch and all Kinko's employees who entered his office would see religious messages prominently displayed at the same time they were being privately disciplined – leading to potential lawsuits against Kinko's like the one asserted by Greene.  *See Venters v. City of Delphi*, 123 F.3d 956, 971-976 (7th Cir. 1997) (holding that non-religious employee who was subjected to proselytizing by her supervisor could maintain an action for both wrongful discharge and workplace harassment under Title VII).

Had Greene been allowed to display religious materials all over his private office, one can imagine the exact opposite situation – a Northern Lights Branch employee who was terminated for performance problems could argue that Greene terminated him because of his lack of religious devotion.  The employee would point to the fact that Greene made no secret that he was a minister and that Greene could not separate his supervisory role from his religious views (as evidenced by the fact that there were religious displays around his office).

2.    **Ordering the removal of religious displays does not constitute direct evidence because it requires a substantial inference to assume that Kuhn's true motivation was to discriminate against religious people.**

In any event, the allegation that Kuhn told Greene to remove religious pictures from his office is not direct evidence of discrimination because it does not

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT          - 8 -          [54249-0001-000000/AA060060.011]

prove the fact of discriminatory animus without a substantial inference. Rather, it merely proves that Kuhn was concerned about having religious pictures in the workplace either because of potential liability or a generalized belief that the store manager's display of religious materials would intimidate subordinates. These facts do not tend to prove discrimination. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 450-51 (2[d] Cir. 1999). In *Bickerstaff*, the plaintiff alleged that a member of an evaluation committee who had recommended against the plaintiff's promotion was a racist. The plaintiff pointed to evidence that the committee member had strongly opposed the expansion of cultural and racial diversity programs and the introduction of an Africana-Studies course. *Id.* at 450. The court quickly rejected such arguments stating:

> [The committee member's] mere opposition to the introduction of a new Africana Studies course he was charged with reviewing, without more, cannot rationally be considered tantamount to an expression of race animus. . . That [the committee member] was critical of the emphasis at Vassar on issues of cultural and racial diversity does not reasonably lead to the conclusion that he was in the grip of race bias.

*Id.* at 450-51. Kuhn's opposition to the display of religious materials at work is indistinguishable from the committee member's opposition to racial diversity programs at Vassar. Both represent a viewpoint which, while on its face touches upon the issue of race or religion, does not reflect any discriminatory intent. In short, there is no direct evidence of discrimination.

## C.     There is no direct evidence of age discriminatory animus.

Greene has also argued that he is a victim of age discrimination based on an opinion expressed by Kuhn (who was terminated from Kinko's at the same time Greene was). Greene's only "evidence" on the issue of age discrimination is the

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

fact that he was replaced by Ted Collins (who was younger) and that Kuhn believed that both he and Greene were fired, in part, because Kinko's wanted to get rid of more highly compensated employees.[6]  Although Greene has not argued that this constitutes "direct evidence" of age discrimination, Kuhn's opinion deserves some mention in this reply.

As an initial matter, the fact that Ted Collins is younger than Greene does nothing to advance the analysis of Greene's claim.  Greene is required to show that his job went to someone outside the protected class (i.e., younger) to even make out a prima facie case.  *Haroldson v. Omni Enterprise, Inc.*, 901 P.2d 426, 430 (Alaska 1995); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 772 (7th Cir. 2002) (holding that the plaintiff could not make a prima facie case for age discrimination because there was no evidence that others, outside the protected class, had been treated more favorably).  However, "the mere existence of a prima facie case, based on the minimum evidence necessary to raise a *McDonnell Douglas* presumption, does not preclude summary judgment."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).  "[A] plaintiff cannot defeat summary judgment simply by making out a prima facie case."  *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991).

---

[6] Greene's argument on this issue is contradictory.  On one hand, Greene argues that Kuhn was out to get him because of his race and religion and that was the reason for his termination.  On the other hand, Greene seems to be arguing that the real reason Greene and Kuhn were both terminated was a way for Kinko's to get rid of older employees.  Greene does not explain this contradiction.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Kuhn's opinion that Kuhn and some Branch Managers were terminated because Kinko's wanted to get rid of highly paid managers suffers from two defects.  First, it is inadmissible.  Second, even if Kuhn's opinion were admissible, it is permissible under the age discrimination laws to terminate more highly compensated employees.

Kuhn's opinion that he was terminated as an excuse so that Kinko's could trim its workforce of more highly paid managers is inadmissible opinion evidence and irrelevant.  Speculations or conclusions are insufficient to overcome summary judgment.  *See Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991).  Moreover, courts routinely reject the opinions of witnesses who speculate that the plaintiff's discharge was due to a discriminatory reason.  *See Bickerstaff v. Vassar College*, 196 F.3d 435, 451-53 (2nd Cir. 1999) (rejecting as conclusory or speculative, the affidavits of three of the plaintiff's co-workers who opined that the denial of the plaintiff's promotion was based on, or affected by, the plaintiff's race); *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 134-35 (4th Cir. 2002) (affirming summary judgment because the plaintiff's supporting affidavits involved the personal beliefs of other person as to whether he was discriminated against); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002) (holding that the plaintiff's conclusory allegation that a particular individual must have been involved in the decision to terminate the plaintiff was not admissible).  Kuhn does not identify the factual basis of his opinion and he did not participate in the decision to terminate himself

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT          - 11 -          [54249-0001-000000/AA060060.011]

and other Branch Managers in order to cut costs.  In short, Kuhn's opinion is a conclusory assertion that cannot be relied upon.[7]

## IV.    Greene has failed to adduce any evidence that would show that his poor MSM scores were a pretext for discrimination or retaliation.

Because Greene does not have any direct evidence of discriminatory animus, he must rely on circumstantial evidence to show that his termination due to low MSM scores was really a pretext for Kinko's to discriminate or retaliate against him.  To do this, Greene must: (1) make an affirmative case that the employer is biased; or (2) show that the employer's proffered explanation for the adverse action is "unworthy of credence."  *Coghlan v. American Seafoods Co., LLC.*, 413 F.3d 1090, 1096 (9th Cir. 2005).  Regardless of whether the plaintiff attempts to make his case affirmatively or negatively, the plaintiff must show

_____

[7] Assuming that Kuhn's opinion for his termination is correct and Kinko's did have a hidden agenda to terminate more highly-compensated employees, this would still not be age discrimination.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 608 (1993) (holding that an employer does not violate the ADEA "by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age.");  *Criley v. Delta Air Lines*, 119 F.3d 102, 105 (2[d] Cir. 1997) ("[E]mployment decisions driven by factors that are empirically intertwined with age are not discriminatory so long as they are motivated by 'some feature other than the employee's age.' Thus, decisions motivated by economic concerns do not violate the ADEA.");  *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 746 (7th Cir. 1994) (noting that saving money is a lawful motive, even though salary and pension benefits tend to increase with age, making age and compensation highly correlated);  *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125-1126 (7th Cir. 1994) (finding that plaintiff "could not prove age discrimination even if he was fired simply because [defendant] desired to reduce its salary costs by discharging him").

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

"'specific and substantial' evidence of intentional discrimination to defeat [an employer's] motion for summary judgment. *Id.*

> **A.    Greene does not dispute that his termination because of his poor MSM scores is legitimate or otherwise "unworthy of credence."**

Greene does not dispute that his MSM scores were unsatisfactory. Motion for Summary Judgment, Ex. 1, Greene Dep. at 81, 113-14, 132, 254-55. Greene does not dispute that rating Branch Managers by MSM scoring was done on a nationwide basis. Greene does not even dispute that Kuhn could not have directly influenced Greene's MSM scores.[8] Motion for Summary Judgment, Ex. 1, Greene Dep. at 74. Instead, Greene asserts that he was a good Branch Manager because the Northern Lights Branch was very profitable during most of the time that he ran it. He therefore believes that it is unfair for him to be rated by MSM scores. However, the only relevant question is whether <u>Kinko's believed</u> that the MSM scoring system was relevant to customer satisfaction. *Tijerino v. University of California*, 132 F.3d 40, 1997 WL 775232 (9th Cir. 1997) ("A plaintiff must show that an articulated reason for discharge is a pretext for a discriminatory motive, not just that it is mistaken.").

---

[8] Greene's opposition indicates that his evaluations were conducted in a subjective manner and could possibly be influenced by Kuhn. However, Greene was terminated because of his poor MSM scores, which Greene admits were not directly influenced by Kuhn. Motion for Summary Judgment, Ex. 1, Greene Dep. at 74. The subjective "evaluations" which form the basis of Greene's allegations of differing treatment were the BEAs and BOAs – audits designed to ensure that quality systems were in place.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Given the significant resources Kinko's employs to ensure MSM scoring is done on a nationwide and objective basis, Greene's claim that low MSM scores was a mere excuse so that Kinko's could terminate him out of discrimination or retaliation is illogical and does not support a finding of pretext. *Dockins v. Benchmark Communications*, 176 F.3d 745, 748-49 (4th Cir. 1999) (terminated employee who failed to meet employer's sales goals could not show pretext); *Shaner v. Synthes*, 204 F.3d 494, 504 (3rd Cir. 2000) (employee could not show pretext where employee admittedly did not follow through with instructions to familiarize himself with a computer program).

There is no question that the financial performance of the Northern Lights Branch was very good and Kuhn (the same person whom Greene claims discriminated against him) and others at Kinko's frequently commended Greene on doing this aspect of his job very well. Nevertheless, Greene was undeniably deficient in his quality scores. Greene does not argue that the Northern Lights Branch's good financial performance somehow "makes up" for his delivery of poor quality. Nor could he. *Paquin v. Federal National Mortgage Ass'n*, 119 F.3d 23, 231-32 (D.C. Cir. 1997) (holding no evidence of pretext for a terminated employee who did most of his job well when it was undisputed that he was deficient in another area). Part of the Branch Manager's job was to deliver high quality as measured through the MSM scoring system and Kinko's is under no obligation to retain a Branch Manager who cannot perform this essential task.

1. **The conclusory statements of Greene and others that Greene was performing according to Kinko's standards is inadmissible.**

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Despite Greene's well-documented and admittedly substandard MSM scores, Greene makes the conclusory statement that "he was performing according to the legitimate expectations of the employer."  Plaintiff's Opposition at 7. Greene also offers the testimony of Mr. Yaskell and Ms. Sagers, offering their opinion that Greene was a good Branch Manager.  This testimony is inadmissible and cannot be used as a basis to defeat summary judgment.

Conclusory allegations of good performance, whether offered by the plaintiff or a witness, are not admissible evidence.  *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir.) (where there was strong evidence of the plaintiff's poor performance, "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact"); *Wilking v. County of Ramsey*, 153 F.3d 869, 874 (8th Cir.) (plaintiff could not prove pretext based on her subjective feeling that her infractions did not warrant discharge); *Bickerstaff v. Vassar College*, 196 F.3d 435, 451-53 (2d Cir. 1999) (rejecting as conclusory or speculative, the affidavits of three of the plaintiff's co-workers who opined that the denial of the plaintiff's promotion was based on, or affected by, the plaintiff's race); *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 134-35 (4th Cir. 2002) (affirming summary judgment because the plaintiff's supporting affidavits involved the personal beliefs of other persons as to whether he was discriminated against); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002).

Greene, Yaskell and Sagers' testimony are all lay opinion which is precluded from being considered.  *Jones v. Denver Post Corp.*, 203 F.3d 748, 756 (10th Cir. 2000) (affidavits of similarly situated employees who stated that, in their

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

opinion, the employer subjected the plaintiff to disparate treatment could not withstand a motion for summary judgment absent specific examples of unlawful discrimination).  The only relevant question is whether the challenged decision-makers believed that Greene was performing adequately.  *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1292 (7th Cir. 1997) (holding that when deciding the question of pretext, "the only issue is whether management honestly held these views").

> **2.    Greene's allegations of being "treated differently" do not show bias because they do not show a retaliatory or discriminatory motive.**

Greene's brief spills a lot of ink asserting how he was "treated differently" (i.e., worse) than other Branch Managers.  Yet, there is a complete absence of any connection to Greene's allegedly disparate treatment and his membership in a protected class.  Despite the fact that six of the nine Kinko's stores that Kuhn managed had minorities as Branch Managers, Greene has pointed to no evidence showing that Kuhn generally treated minority Branch Managers any differently than others.  Motion for Summary Judgment, Ex. 2, Kuhn Dep. at 20.  Greene has not provided any evidence that any of the other Branch Managers who Kuhn allegedly treated better were younger or did not hold strong religious beliefs.

> **a.    The fact that Kuhn was spending extra time to ensure that Greene had the proper procedures in place to achieve the required MSM scores does not show pretext.**

On November 19, 2002, Greene was issued a written reprimand because his MSM scores were poor.  Motion for Summary Judgment, Ex. 31.  Greene brought his MSM scores up slightly, but at the end of 2002, Greene's MSM scores were the worst in the district that Kuhn managed.  Motion for Summary Judgment,

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Ex. 11, at 1.  Throughout 2003, Greene's MSM scores continued to decline and he was again given a written reprimand in May.  Motion for Summary Judgment, Ex. 14.

At the same time, Kuhn informed Greene that Greene's failure to meet the MSM score standards was related to Greene's failure to have standard operating procedures in place and a poor team of managers in the store (selected by Greene). *Id.*  Kuhn's tool to help Greene put in place the proper procedures was the Kinko's quality audits, known as BOAs and BEAs, which would identify where the Northern Lights Branch was deficient.  Motion for Summary Judgment, Ex. 2, Kuhn Dep. at 32.  Greene does not allege that Kuhn scored the Northern Lights Branch inaccurately in the BOAs and BEAs.

Greene now complains that Kuhn treated him differently than Ms. Sagers because Kuhn did not perform as extensive a quality audit on Ms. Sagers' store. Specifically, Ms. Sagers stated that Kuhn would sometimes "not look at things and just mark that we had done them right."[9]  *See* Plaintiff's Opposition, Ex. 7 at 55-57.  However, Sagers clearly states that "I know that we had gotten it right because I knew that we had done our work and gotten it done."  Of course, Kuhn knew at the time that he conducted these audits that Sagers' store had the proper operating procedures in place.  Her MSM scores were very good.  *Id.* at 27.

_____

[9] Sagers also believes Kuhn is a "jerk" and believes that Kuhn was easier on Sagers' quality audits in order to make Greene's audit scores look better. Plaintiff's Opposition, Ex. 7 at 56.  Of course, she has no personal knowledge to express this lay opinion and admits that the basis of her knowledge on this issue is limited to information she heard from Greene.  *Id.* at 57-58.  As such, this opinion is inadmissible.

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

On the other hand, Greene's MSM scores constantly needed drastic improvement since he had taken control of the Northern Lights Branch in 2000. It only makes sense that Kuhn would have been more stringent on Greene's audits. Kuhn's rigorous identification of deficiencies that Greene could correct would improve the Northern Lights Branch's MSM scores. There is nothing discriminatory about Kuhn's goal to help Greene's MSM scores. It certainly cannot be considered "specific and substantial evidence" to spend extra time helping Greene identify areas to improve the faltering Northern Lights Branch. Greene's argument that this constitutes evidence of discrimination would mean that every teacher would be discriminating against a failing student after she assigned extra work in order to help the student meet standards before a final exam. It cannot be considered discriminatory.

> **b.    The personality conflict between Greene and Kuhn does not provide specific and substantial evidence of discrimination.**

Kuhn's attempts to help Greene's poor MSM scores by providing additional supervision were not accepted by Greene. As outlined in Kinko's Motion for Summary Judgment, in each year that Kuhn gave Greene a performance review, it would compliment Greene on the Northern Lights Branch's good financial performance, but would tell Greene that his MSM scores were deficient. However, Greene's MSM scores continued to decline despite Kuhn's explicit instruction to improve them. In one performance appraisal, Kuhn even described Greene as a "slow learner" in relation to Greene's lack of follow through. When simply raising the issue of the low MSM scores in annual

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

performance reviews did not lead Greene to improve them, Kuhn moved on to formal discipline.

There is no doubt that there was a personality conflict between Greene and Kuhn.  Kuhn was frustrated with Greene's inability to work on improving his MSM scores.  As such, some witnesses believe that Kuhn spoke to Greene in a condescending manner and that there was tension between the two.  However, the personality conflicts which arose out of Greene's substandard performance does not constitute "specific and substantial evidence" of discrimination.  *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997) ("An animus not related to [protected status], such as a personality conflict . . . is not evidence of improper discrimination); *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (personnel actions motivated by personality conflicts or cronyism do not violate Title VII); *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1120 (8th Cir. 1997) (Title VII does not "prohibit employment decisions based upon erroneous evaluations [or] personal conflicts between employees."); *Bellissimo v. Westinghouse Elec. Corp.*, 764 F.2d 175, 182 (3rd Cir. 1985) ("unfortunate and destructive conflict of personalities does not establish discrimination.").

Greene feels like he was discriminated against because Ted Collins, who had exceptional quality scores, had a very good relationship with Kuhn.  However, the fact that Kuhn got along well with one subordinate and not another does not establish discrimination.  *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 271 (9th Cir. 1996) (holding that it did not show sex discrimination when a supervisor treated a male subordinate well and a female subordinate poorly where "nothing indicates that [the supervisor's] favoritism of [the male subordinate] stemmed from

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

his sex rather than his competence or performance, particularly in light of [the female subordinate's] inadequate performance during the same period."); *Brandt v. Shop'n Save Warehouse Foods, Inc.*, 108 F.3d 935, 938-39 (8th Cir. 1997) (holding that although job may have been created and person hired based on friendship, rather than qualifications, this did not raise inference that decision motivated by gender discrimination); *Autry v. North Carolina Dep't of Human Resources*, 820 F.2d 1384, 1385 (4th Cir. 1987) (holding race discrimination case not made by showing that friendship or politics may have entered into promotion decision); *Clement v. Madigan*, 820 F.Supp. 1039, 1046-47 & n.10 (W.D. Mich. 1992) (holding evidence of nepotism does not raise inference of pretext or racial discrimination); *Sanchez v. Philip Morris, Inc.*, 992 F.2d 244, 247-48 (10th Cir. 1993) (stating that Title VII does not protect against adverse employment decisions made on such factors as favoritism).  Kuhn had one Branch Manager who was performing well and another who was not.  This does not establish any inference of discrimination – much less specific and substantial evidence.

>      **c.    Greene has failed to address Kinko's legitimate and nondiscriminatory reasons for not giving Greene additional equipment and management whenever Greene demanded it.**

Kuhn explained that Greene did ask for additional equipment and also explained why Greene could not have all the additional equipment he wanted whenever Greene demanded it.

> All of our computers were on lease, so when equipment would come up off of lease is when equipment would be replaced.  So if he was pushing to get something before end of a lease, then it wouldn't happen.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Motion for Summary Judgment, Ex. 2, Kuhn Dep. at 172.  Greene has not pointed to any specific and substantial evidence that Kuhn's reason for not giving him a new computer was not truthful.  Greene has not addressed Kinko's explanation at all and, therefore, cannot show pretext.

Kinko's also articulated its legitimate and nondiscriminatory reason why it did not allow Greene to hire assistant managers without having his superiors review the decision – namely because Greene had an admitted history of choosing bad assistant managers.  Greene had to demote an assistant manager because he repeatedly had problems on an important project.  Motion for Summary Judgment, Ex. 1, Greene Dep. at 150; Ex. 29, Laurie Greene Dep. at 38-39.  Greene also wanted to promote a delivery driver to the position of assistant manager – a decision that Greene admits was probably incorrect.  *Id.* at 155-56.  Kuhn also frequently told Greene that part of the reason that Greene's MSM scores were low was because Greene had hired poor assistant managers.  Motion for Summary Judgment, Ex. 14 (Performance Counseling Statement stating that "[t]he core team has had a leadership team that is weak or has not been managed toward the objectives of the company" and noting that two assistant managers had to be demoted because they "failed to uphold our standards"); Motion for Summary Judgment, Ex. 11 at 7 ("The core team was not strong and was falling short of our objectives, and even flaking out on you . . . .  You'll need to hire, and more importantly develop some strong TM's to help us move forward.").  Kuhn was attempting to ensure that Greene had a good team to work with and improve his customer satisfaction.  Motion for Summary Judgment, Ex. 2, Kuhn Dep. at 69-70.  Greene does not challenge Kinko's legitimate nondiscriminatory reason and

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

cannot show pretext.

**B.    Greene has pointed to no evidence that Kuhn was biased against people who are minorities, religious, or those who file complaints of discrimination.**

Greene's primary argument seems to be that Kuhn was biased against Greene based on a laundry list of every complaint Greene had about Kuhn as his manager.  None of Greene's complaints are specific and substantial evidence of bias.

**1.    Greene has pointed to no evidence that Kuhn was biased against minorities.**

Six of the nine Kinko's stores that Kuhn managed had minorities as Branch Managers and Greene has pointed to no evidence showing that Kuhn treated minority Branch Managers poorly.  Motion for Summary Judgment, Ex. 2, Kuhn Dep. at 20.  The only evidence that Greene has identified which even touches on the issue is the "monkey mimicry" incident which utterly fails to meet the test as specific and substantial evidence.  Greene admits that the customer, who originally accused Greene of running the store like a monkey, was not racist.  Motion for Summary Judgment, Ex. 1, Greene Dep. at 188-190.  However, Greene speculates that Kuhn was a racist because Greene thought that Kuhn had treated Greene badly in the past.  *Id.* Ex. 1, Greene Dep. at 190-91.  This speculation does not rise to the level of specific and substantial evidence.  *Carmen v. San Francisco Unified School District*, 297 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive."); *Simmons v. Chicago Board of*

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT     - 22 -     [54249-0001-000000/AA060060.011]

*Education*, 289 F.3d 488, 492-93 (7th Cir. 2002) (affirming summary judgment and rejecting plaintiff's conclusory argument that he and others considered one of his superiors a racist); *Bickerstaff v. Vassar College*, 196 F.3d 435, 451-53 (2nd Cir. 1999) (rejecting as conclusory or speculative, the affidavits of three of the plaintiff's co-workers who opined that the denial of the plaintiff's promotion was based on, or affected by, the plaintiff's race); *Wallace v. O.C. Tanner Recognition Co.*, 299 F.3d 96, 101 (1st Cir. 2002) (holding that mere speculation as to the possibility of the employer's sinister motives was insufficient to prevent the entry of summary judgment). Greene's speculation fails to meet the test of specific and substantial evidence.

> **2.      Greene has pointed to no evidence that Kuhn was biased against religious people.**

Kuhn and some of his Branch Managers would occasionally drink and gamble with each other. Greene also alleges that once Kuhn suggested that they all go to a strip club but decided not to because Kuhn recognized that Greene would not want to. Greene has not pointed to any causal connection between his refusing to drink or gamble with Kuhn and his termination. Greene admits that Kuhn never communicated to Greene that Greene's career would be hurt if he did not drink with the other Branch Managers. Motion for Summary Judgment, Ex. 1, Greene Dep. At 202. These incidents did not make Greene feel uncomfortable, but Greene speculates that he might not have had as good a relationship with Kuhn as the other Branch Managers. *Id.* at 197. Greene's argument that his termination was due to some undisclosed religious bias on the part of Kuhn suffers from the same fatal defect as his claim of racial bias. It is no more than his own

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

speculation.

> **3.** **Greene has pointed to no evidence that Kinko's was biased against him because he made a discrimination complaint.**

There is also no evidence that Greene was the victim of retaliation as the result of making his complaint. His argument on this issue appears to focus on two related issues.[10] First, Heather Clark informed Kuhn that Greene had made some kind of complaint before it was investigated, and second, Greene believed that Kinko's did not perform an adequate investigation. Neither of these facts constitute evidence of retaliation.

> **a.** **The mere fact that Clark told Kuhn that Greene had made a discrimination complaint is not evidence of retaliation.**

Before Greene's discrimination complaint, Kuhn had scheduled a trip to Alaska to terminate him for failing to raise his MSM scores to an acceptable level. Once Kinko's obtained Greene's complaint, Clark immediately told Kuhn that he could not terminate Greene and told him why. Admittedly, Kinko's management

---

[10] Greene also makes an allegation that it was somehow retaliatory not to immediately provide more staffing and equipment to Greene after he had made his discrimination complaint. Kinko's has already provided its legitimate and nondiscriminatory reasons for these actions. Kuhn admitted that, after Greene's discrimination complaint, he was a little slow about allowing Greene to hire new managers because Kinko's Human Resources wanted to approve any of Kuhn's decisions related to the subject. Motion for Summary Judgment, Ex. 2, Kuhn Dep. at 281-82. Kinko's has already asserted its legitimate and nondiscriminatory reason for having others review Kuhn's decisions related to the Northern Lights Branch – to ensure absolute fairness to Greene. Greene does not rebut this assertion.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

did not believe at the time that it was appropriate for Kuhn to learn about Greene's complaint prior to the investigation. However, sharing the reasons why Greene could not be terminated with Kuhn is not a retaliatory action. If anything, it saved Greene's job.

Greene has pointed to no statement where any Kinko's manager admitted that Greene should be terminated or otherwise disciplined for filing a discrimination complaint. Instead, all the evidence points to the contrary. Kinko's Vice-President Charlie Fisher wrote a series of e-mails to ensure that Kinko's took a second-look at Greene's performance before taking any disciplinary action against him.

> [Greene] is not taking any accountability for performance or the decline in performance of his branch. I suggest we clearly point out the facts. Cover him up with data that shows the real issue, which is the continuous decline in branch performance.

Fisher's e-mail's also express concern about the appearance of retaliation after Greene made his internal complaint of race and religious discrimination. The basis of his concern is twofold. First, Greene scored poorly on a BOA shortly after he made his complaint about Kuhn. Second, Clark told Kuhn that he should not terminate Greene due to poor MSM scores because Greene had made some kind of complaint. From these facts, Fisher, who is not a lawyer, jumped to the conclusion that Kinko's "had no case against a retaliation charge" and that Kuhn's evaluation could "easily be construed as retaliatory."

Fisher's opinions are simply inadmissible. *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) (holding that a lay witness may not testify to a legal conclusion); *United States v. Baskes*, 649 F.2d 471, 479 (7th Cir. 1980)

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

(holding that a witness's opinion testimony is inadmissible when it concerns the legal implications of certain conduct); *Christiansen v. National Sav. and Trust Co.*, 683 F.2d 520 (D.C. Cir. 1982) (lay legal conclusions are inadmissible in evidence); *Mitroff v. Xomox Corp.*, 797 F.2d 271, 274-77 (6th Cir. 1986) (in employment discrimination suit, company official's statements that there was a pattern of age discrimination in that company and in other related companies was inadmissible opinion under Evidence Rule 701). Fisher's expression of fear of a possible retaliation lawsuit is simply not admissible evidence to prove a retaliatory motive.

### b. Kinko's investigation into Greene's complaint is simply irrelevant.

Greene's opposition frequently claims that Kinko's investigation into Greene's discrimination complaint was flawed, but even if this were true, it does nothing to prove retaliatory animus. The only thing that it might prove would be Kinko's incompetence in handling discrimination complaints. Whether or not Kinko's competently investigated Greene's discrimination complaint does not tend to either prove or disprove retaliation. *See Tijerino v. University of California*, 132 F.3d 40, 1997 WL 775232 (9th Cir. 1997) ("A plaintiff must show that an articulated reason for discharge is a pretext for a discriminatory motive, not just that it is mistaken."); *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1292 (7th Cir. 1997) (holding that when deciding the question of pretext, "the only issue is whether management honestly held these views").

Under AS 18.80, Title VII and the ADEA, the efficacy and promptness of an employer's investigation and the corrective action taken is only relevant in one

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

situation – where an employee suffers <u>no tangible employment action</u> (such as in a workplace harassment case).  In such cases an employer is not liable under the doctrine of *respondeat superior* for a supervisor's sexual harassment, if it can prove (a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  *Ellerth v. Burlington Indus. Inc.*, 524 U.S. 742, 763 (1998).  *See also VECO, Inc. v. Rosebrock*, 970 P.2d 906, 915 (Alaska 1999) (under Alaska law employers are vicariously liable for hostile environment sexual harassment committed by the complainant's supervisor).  Thus, whether an employer conducted a prompt and thorough investigation of an internal sexual harassment complaint may be relevant to this affirmative defense.

However, it is undisputed in this case that Greene was subjected to a tangible employment action.  <u>He was terminated.</u>  As such, this affirmative defense is not allowed to Kinko's.  *Pennsylvania State Police v. Suders*, 524 U.S. 129, 124 S. Ct. 2342, 2353 (2004); *Hilling v. Rumsfeld*, 381 F.2d 1028, 1032 (10th Cir. 2004).  Thus, if an employer discharges an employee or takes other discrete action against an employee because of his race, as is alleged here, the employer is liable, period.  *Id*.  Whether the employer conducted a competent investigation of the alleged discrimination is simply irrelevant.

## CONCLUSION

Greene's opposition to summary judgment is a list of complaints that he had about Kuhn's management over a three year period.  However, it does not address the fundamental basis of Kinko's motion for summary judgment – that

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Greene had poor MSM scores and ignored Kuhn's repeated demands to improve

them.  Did Greene's failure to fix this problem lead to interpersonal problems

between he and Kuhn?  Most certainly.  However, the conflict between the two

cannot defeat Kinko's Motion for Summary Judgment given the long and well

documented history of Greene's poor performance.

DATED:  January 17, 2006.

**PERKINS COIE** LLP
Attorneys for Defendant FedEx Kinko's
Office and Print Services, Inc.

By s/_____
      Thomas M. Daniel
      Alaska Bar No. 8601003

      Jacob Nist
      Alaska Bar No. 0211051

      1029 West Third Ave., Suite 300
      Anchorage, Alaska  99501
      907/279-8561/907-276-3108 (fax)
      tdaniel@perkinscoie.com

I hereby certify that a true and correct
copy of the foregoing is being served
electronically on James Seedorf this 17th
day of January, 2006.
s/_____
Thomas M. Daniel

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT        - 28 -        [54249-0001-000000/AA060060.011]