James M. Seedorf
Hughes Bauman Pfiffner
 Gorski & Seedorf, LLC
3900 C Street, Suite 1001
Anchorage, Alaska 99503
(907) 263-8225

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DWIGHT GREENE,<br><br>    Plaintiff,<br><br>vs.<br><br>FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC.<br><br>    Defendant. | |

Case No. A04-0160 CV (RRB)

**PLAINTIFF'S MOTION FOR RELIEF**

  COMES NOW the plaintiff, by and through his counsel of record, and pursuant to FRCP 60(b) moves this court for relief from the judgment entered on May 23, 2006, and the underlying order of May 17, 2006, granting defendant's Motion for Summary Judgment. Plaintiff seeks relief on the basis of FRCP 60(b)(1) [mistake] in that the court has overlooked and/or misconceived material facts about the case that should have led to a finding that the genuine issues of material fact must be considered and decided by a jury, thereby precluding an award of summary judgment.

*Plaintiff's Motion for Relief*
*Greene v. FedEx Kinko's,* Case No. A04-0160 CV
246937(8690-1)  Page 1 of 6

I.    **The "Monkey Mimicry" Incident Provides Direct Evidence of Racial Bias.**

The court erred in concluding there was no direct evidence of discrimination. Mimicry of a monkey directed by a white supervisor to a black subordinate is clearly discriminatory in both its intent and its content. No inference is required when the racial context of such epithets is apparent on the surface. *Coughlin v. American Seafoods Company, LLC,* 413 F. 3d 1090, 1095 (9th Cir. 2005). Indeed, the United States Supreme Court has recognized that a single statement can be sufficient to demonstrate racial bias even when the verbiage, standing alone, might have alternative benign connotations. *Ash v. Tyson Foods,* 126 S. Ct. 1195, 1197 (2006) [Evidence that the plant manager referred to the black petitioners as "boy" was sufficient to show pretext even though it was not modified by a racial classification such as "black" or "white."] Here, the nonverbal mimicry of a monkey directed to a black employee provides direct evidence of racial bias that is sufficient to enable reasonable jurors to find discrimination. Even if deemed indirect, the inference is so minimal that the other differences in treatment of Mr. Greene vs. his peers should more than satisfy the evidentiary requirements needed to raise a genuine issue of material fact. *Cordova vs. State Farm Ins.*, 124 F.3d 1145, 1149 (9th Cir. 1997).

For purposes of the summary judgment motion, it must be assumed that the mimicry incident took place. Not only has the incident has been described in detail by Dwight Greene, that fact that it occurred has more recently confirmed by Ted Collins in his testimony. *See,* Docket 39 at 7-8 (Exhibit 1), Docket 49 at 4 (Exhibit A at 45-6).

*Plaintiff's Motion for Relief*
*Greene v. FedEx Kinko's,* Case No. A04-0160 CV
246937(8690-1)        Page 2 of 6

While Lisa Sagers did not recall the incident, and while Kinko's investigation concluded that it could not confirm that it took place, Mr. Collins stated in his deposition that the mimicry did in fact occur. *Id.* Construing that incident in the light most favorable to the plaintiff, as is required in the context of a Rule 56 motion, leads to the inescapable conclusion that Mr. Kuhn exhibited direct racial bias toward the plaintiff. Defendant's suggestions that the incident could have "benign" connotations only serve to generate additional factual issues, and must be left for the jury to decide.

**II.    Plaintiff Was Performing Within the "Legitimate" Expectations of Kinko's.**

The court stated that plaintiff failed to establish a prima facie case based upon the erroneously conclusion that plaintiff failed to improve his MSM scores in accordance with the "legitimate" expectations of his employer. The evidence, however, is clear that Dwight did initiate efforts to improve the scores through worker training and discussion. *See*, Docket 49 at 9. Indeed improvement was achieved and scores were trending upward. *See*, Defendant's graph of MSM scores (presented at oral argument) attached hereto as Exhibit A. But Kinko's targets, expectations, and time constraints cannot be characterized as "legitimate" where the manager is forced to work with fewer than the authorized number of employees because of limitations on his hiring authority or because of equipment needs that were left unsatisfied. *See*, Docket 39 at 19-22. Moreover, the very evaluations that were proffered to demonstrate the "substandard" performance were those of the manager whose actions are challenged on the basis of racial bias. *See*, Docket 39 at 23-25.

*Plaintiff's Motion for Relief*
*Greene v. FedEx Kinko's,* Case No. A04-0160 CV
246937(8690-1)        Page 3 of 6

### III.  Dwight Greene Was Singled Out By Ron Kuhn For Termination.

The court also erred in finding that a prima facie case was lacking because there was insufficient evidence that others were treated differently than Mr. Greene. In so finding, the court relied upon the same documents used by Kinko's to justify its termination action. *See*, Docket 35 (Exhibit 27). Those documents, however, reflect that other managers who were not terminated scored even lower than Mr. Greene. *Id.* [Even comparing the challenged scores in November 2003 reveals dozens of other stores with lower scores.] There quite simply is no uniformly applied policy for termination of managers who failed to meet MSM scoring expectations, just as those there was no policy for those who scored lower than the Northern Lights store in other areas, such as sales volumes, profitability, or expense ratios. *See*, Docket 35 (Exhibit 8). Fluctuations in performance are the norm rather than the exception, and managers who are near the top one month may fall dramatically in another. *Id.*

Instead, Dwight Greene was selected for special treatment by a supervisor who engaged in demeaning tactics that bear racial connotations in an unambiguous effort to get rid of Mr. Greene. The testimony is clear that Mr. Greene was treated differently by Ron Kuhn than the other Alaska managers in a variety of ways that further reflect the animus he held for Mr. Greene. *See*, Docket 39 at 23-25, 39-40 [Depositions of Dwight Greene, Lisa Sagers, and Scott Yaskell (Exhibits 9, 10, 23)]. Given the context of these actions and the direct racial content of his monkey mimicry, there is at least a jury question regarding his motivation in treating Dwight differently form other employees.

*Plaintiff's Motion for Relief*
*Greene v. FedEx Kinko's,* Case No. A04-0160 CV
246937(8690-1)     Page 4 of 6

IV. **Plaintiff's Internal Complaint Preceded the Formal Termination Process.**

The court incorrectly concluded that the termination process had been commenced prior to the submission of Mr. Greene's internal complaint, thereby avoiding a finding of retaliation. While Kuhn may have believed that termination was the likely outcome even before the internal complaint was made, his July 2003 trip to Alaska was to perform a Branch Evaluation Audit and not to terminate Mr. Greene. *See*, Docket 35 at 12 [Affidavit of Heather Clark (Exhibit 16 at ¶ 7)]. Moreover, no termination process for Dwight Greene was approved until late 2003, well after the complaint had been made and investigated. *Id.* at ¶ 7, 13; *See also*, Gimbel depo at 32, 134-6 (attached as Exhibit B).

The retaliation by Kinko's after completion of its investigation of the internal complaint is clear, and has not been addressed by the court. Following the interim supervision by Mike Gadberry, Heather Clark's offered to "start over" if Dwight would forget about his complaint. *See*, Docket 39 at 3 (Exhibit 2 at 255). When he declined, the formal process for termination was implemented. *Id.* The reality is, that Mr. Greene was terminated not because of job performance, but in retaliation for his refusal to drop his complaint that Ron Kuhn had discriminated against him.

V. **Conclusion.**

The evidence presented to the court raised genuine issues of material fact. The testimony should have been construed in the fashion most favorable to the plaintiff. Defendant's motion for summary judgment should have been denied because there were numerous genuine issues of material fact that could only be resolved by a jury at trial.

*Plaintiff's Motion for Relief*
*Greene v. FedEx Kinko's,* Case No. A04-0160 CV
246937(8690-1)        Page 5 of 6

DATED at Anchorage, Alaska this 2nd day of June, 2006.

                                                  HUGHES BAUMAN PIFFNER
                                                  GORSKI& SEEDORF LLC
                                                  Attorneys for Plaintiff

By:   s/_____
       James M. Seedorf
       ABA No. 7710164
       3900 C Street, Suite 1001
       Anchorage, Alaska 99503
       907-263-8225/907-263-8320 (fax)
       jms@hbplaw.net

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing is being served electronically on Thomas Daniel this 2nd day of June, 2006.

s/_____
James M. Seedorf

*Plaintiff's Motion for Relief*
*Greene v. FedEx Kinko's,* Case No. A04-0160 CV
246937(8690-1)    Page 6 of 6

## LIST OF EXHIBITS

## PLAINTIFF'S MOTION FOR RELIEF

A.  Chart, "District 16 MSM Scores 2000-2003"
B.  Deposition of Tracy Gimbel, pages 31-32, 134-136