James M. Seedorf
Hughes Bauman Pfiffner
 Gorski & Seedorf, LLC
3900 C Street, Suite 1001
Anchorage, Alaska 99503
(907) 263-8225

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DWIGHT GREENE,<br><br>                Plaintiff,<br><br>vs.<br><br>FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC.<br><br>                Defendant. | |
| | Case No. A04-0160 CV (RRB) |

## PLAINTIFF'S REPLY MEMORANDUM
## IN SUPPORT OF HIS MOTION FOR RELIEF

COMES NOW the plaintiff, by and through his counsel of record, and states his reply to Kinko's Opposition to the Motion for Relief from judgment. Kinko's argues that there is no evidence of direct racial bias, that Mr. Greene's MSM scores were inadequate, and that there is no causal link between the termination and the discrimination complaint. Kinko's is wrong on all three points. The termination was the product of a "planned

Plaintiff's Reply Memorandum in Support of His Motion for Relief – Page 1 of 8
*Greene v. Fed-Ex Kinko's.*, Case No. 04-0160 CV (RRB)
248101v2(8690-1)

outcome" acknowledged by Human Resources VP Fisher in his internal memo regarding the investigation of Greene's complaint. Docket 39 (Exhibit 12).

I.   The "Monkey Mimicry" Incident Provides Direct Evidence of Racial Bias.

Kinko's renews its argument there was no direct evidence of discrimination and apparently contends that it was acceptable for a white supervisor to mock his black subordinate through mimicry of a monkey under the circumstances presented in this case. Mr. Greene has acknowledged that he did not believe that the customer who made the monkey comment was engaging in racial commentary – because the customer was unaware that the manager was black. Mr. Kuhn (Kinko's supervisor), however, was well aware of that fact, and it was Mr. Kuhn, not the customer, who engaged in the mimicry. Moreover, the fact that an attendee of the meeting did not view the mimicry as racially motivated is irrelevant. It is the perception of a reasonable black person under the circumstances presented, not that of a white attendee at the meeting (Ted Collins) who was not the target of the gesture, that is relevant in the determination of the propriety and context of the nonverbal gesture.

Mr. Greene has observed in his motion for relief that mimicry of a monkey directed by a white supervisor to a black subordinate is clearly discriminatory because no inference is needed - the racial context of the epithet is readily apparent. *Coughlin v. American Seafoods Company, LLC,* 413 F. 3d 1090, 1095 (9th Cir. 2005). Indeed, plaintiff noted that the United States Supreme Court determined that a single statement could suffice to demonstrate racial bias even when the verbiage, standing alone, might

Plaintiff's Reply Memorandum in Support of His Motion for Relief – Page 2 of 8
*Greene v. Fed-Ex Kinko's.,* Case No. 04-0160 CV (RRB)
248101v2(8690-1)

have alternative benign connotations. *Ash v. Tyson Foods*, 126 S. Ct. 1195, 1197 (2006). Kinko's argues that the *Ash* case has been misconstrued because the underlying court was instructed to look at the context in which the reference to the black petitioners as "boy" was made, and that the context here takes the remarks outside of the scope of the Supreme Court's decision.

Kinko's "context argue" should be rejected because it focuses on the customer's statement regarding management of the branch rather than Mr. Kuhn's mimicry of a monkey. Whether the customer's statement was or was not racially motivated is irrelevant to the issue presented. It is the mimicry by Mr. Kuhn that is at issue, and it is clear that he knew that Plaintiff was black, directed the gesture at plaintiff, and engaged in his nonverbal statement in a meeting of Kinko's branch managers wherein he was the senior representative of the company present. His nonverbal mimicry of a monkey provides direct evidence of racial bias that is sufficient to enable reasonable jurors to find discrimination. Even if deemed indirect, the inference is so minimal that, when combined with the numerous other differences in treatment of Mr. Greene vs. his peers, there is more than enough evidence to satisfy the evidentiary requirements needed to raise a genuine issue of material fact in order to defeat summary judgment. *Cordova vs. State Farm Ins.*, 124 F.3d 1145, 1149 (9th Cir. 1997).

In the context of the underlying Rule 56 motion, all inferences from the monkey mimicry incident must be construed in the light most favorable to the plaintiff, thereby leaving no other possible conclusion than that Mr. Kuhn exhibited direct racial bias

Plaintiff's Reply Memorandum in Support of His Motion for Relief – Page 3 of 8
*Greene v. Fed-Ex Kinko's.*, Case No. 04-0160 CV (RRB)
248101v2(8690-1)

toward the plaintiff. Defendant's suggestions regarding "benign" connotations and "inferential leap[s]" are out of place where direct evidence has been presented, and Kinko's arguments only serve to identify and highlight additional factual issues that must be left for the jury to decide.

II. **Plaintiff Was Performing Within the "Legitimate" Expectations of Kinko's.**

Kinko's would have the court ignore the substantial evidence in the record demonstrating that a supervisor can influence the MSM scores of his subordinates in a variety of ways, as acknowledged by each of the Alaska branch managers in their respective depositions. Annual reviews and periodic audits are directly performed by the supervisor under the subjective criteria developed by the company. Even the MSM scores, however, may be influenced in a more subtle fashion through the extension or withholding of support and authority that is directly within the control of the supervisor. Docket 39 at 19-25.

Kinko's concedes that Mr. Greene did show improvement in his MSM scores, which were trending upward at the time of his termination despite the impediments imposed upon by Mr. Kuhn, but argues that it just wasn't good enough. As previously argued, Kinko's targets, expectations, and time constraints cannot be characterized as "legitimate" where the manager is forced to work with fewer than the authorized number of employees because of limitations on his hiring authority or because of equipment needs that were left unsatisfied. *See*, Docket 39 at 19-22. Moreover, the very evaluations that were proffered to demonstrate the "substandard" performance were those of the

Plaintiff's Reply Memorandum in Support of His Motion for Relief – Page 4 of 8
*Greene v. Fed-Ex Kinko's*, Case No. 04-0160 CV (RRB)
248101v2(8690-1)

manager whose actions are challenged on the basis of racial bias. *See*, Docket 39 at 23-25. Mr. Greene should be allowed to have a jury decide whether the impediments to his success were appropriate, or whether they rendered the scores he received illegitimate.

### III. Ron Kuhn Retaliated Against Dwight Greene Upon Learning of the Internal Complaint Against Him.

In July 2003, despite Greene's request for confidentiality and the fact that an investigation had not then even been commenced, Ron Kuhn was informed by Heather Clark that Dwight Greene had made a complaint against him, and authorized by Heather to approach Dwight to discuss the complaint. It is undisputed that Kuhn confronted Greene about the complaint, and when Greene declined to discuss it, proceeded with an evaluation that gave the Northern Lights store the lowest rating it had ever received. During the course of the evaluation, Kuhn approached Greene and suggested that he resign as store manager because he clearly was not going to achieve satisfactory results from the scores that were being recorded. Greene declined, and Kuhn completed the evaluation with the predicted results. Docket 39 at 15, (Exhibit 1 at 1, Exhibit 3 at 9).

Kuhn's actions stand as retribution for Greene's internal complaint. Given the circumstances presented, he should not have even known of the complaint, much less been involved in further evaluation of and/or confrontation with Greene. Moreover, the anti-retaliation provisions of the state and federal laws are broader than the anti-discrimination provisions, and do not require that Kinko's ultimate discharge Greene be tied of the retaliation. In the recent United States Supreme Court decision in *Burlington*

Plaintiff's Reply Memorandum in Support of His Motion for Relief – Page 5 of 8
*Greene v. Fed-Ex Kinko's*, Case No. 04-0160 CV (RRB)
248101v2(8690-1)

*Northern and Santa Fe Railroad Co. v. White*, 548 U.S. ____ (June 22, 2006), the Supreme Court concluded that the anti-retaliation provision covers any "employer actions that would have been materially adverse to a reasonable employee" and that it reaches actions which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

It is clear that confrontation with one's supervisor and exposure to low evaluation scores are actions that are materially adverse to an employee. Such actions not only have a direct impact on the affected employee, they stand as an open threat to others who may offer support for the affected employee, or who might have considered making similar complaints about the employer or its supervisors. Here, Greene was the victim of Kuhn's reaction to the submission of an internal complaint, and his vindictive response stands as a clear warning to others who might consider offering their support to Greene or submitting complaints of their own. As such, Kuhn's retaliation invaded a legally protected right, and triggers the anti-retaliation protections of the state and federal laws.

**IV.    Dwight Greene Was Terminated Because of His Internal Complaint Against His Supervisor.**

Kinko's argues that there is no causal link between discrimination and termination, and that there can be no retaliation because of the MSM scores. However, Kinko's also concedes that Heather Clark discussed a "fresh start" with Mr. Greene when Kuhn was "re-engaged" as supervisor for Greene in October of 2003. *See also*, Docket 39 at 3 (Exhibit 2 at 255). Kinko's argues that the exchange has been misconstrued, but does not

Plaintiff's Reply Memorandum in Support of His Motion for Relief – Page 6 of 8
*Greene v. Fed-Ex Kinko's*, Case No. 04-0160 CV (RRB)
248101v2(8690-1)

deny that it was not until Greene declined her proposal that Clark implemented the formal process for termination. *Id.* The implication of that Clark's remarks is that Mr. Greene would not have been terminated if he had been willing to forget what had happened. Since he did not agree, however, Clark took action. The termination proceeded as retaliation for his refusal to drop his complaint that Ron Kuhn and Kinko's had engaged in discrimination against him.

V.  **Conclusion.**

Kinko's points in opposition to the motion for relief do nothing to alter the fact that the evidence presented to the court raised genuine issues of material fact. The defendant's motion for summary judgment should have been denied because the evidence, when construed in the fashion most favorable to the plaintiff, raises numerous genuine issues of material fact that could only be resolved by a jury at trial.

DATED at Anchorage, Alaska this 27th day of June, 2006.

HUGHES BAUMAN PIFFNER
GORSKI& SEEDORF LLC
Attorneys for Plaintiff

By: s/  James M. Seedorf
ABA No. 7710164
3900 C Street, Suite 1001
Anchorage, Alaska 99503
907-263-8225/907-263-8320 (fax)
jms@hbplaw.net

Plaintiff's Reply Memorandum in Support of His Motion for Relief – Page 7 of 8
*Greene v. Fed-Ex Kinko's*, Case No. 04-0160 CV (RRB)
248101v2(8690-1)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing is being served electronically on Thomas Daniel this 27th day of June, 2006.

s/ James M. Seedorf

Plaintiff's Reply Memorandum in Support of His Motion for Relief – Page 8 of 8
*Greene v. Fed-Ex Kinko's.*, Case No. 04-0160 CV (RRB)
248101v2(8690-1)