**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 04 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

RECEIVED

MAY 0 5 2008

CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

| | |
|---|---|
| DWIGHT GREENE,<br><br>    Plaintiff - Appellant,<br><br>v.<br><br>FEDEX KINKO'S INC.,<br><br>    Defendant - Appellee. | No. 06-35715<br><br>D.C. No. CV-03-00160-RRB<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted August 7, 2007
Anchorage, Alaska

Before: WALLACE, NOONAN, and PAEZ, Circuit Judges.

Greene appeals from the district court's summary judgment in favor of FedEx Kinko's Inc. (Kinko's). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, and reverse and remand in part.

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

# I

The district court did not err by awarding a summary judgment in Kinko's favor on Greene's claim that Kinko's treated him differently on the basis of his race in violation of Alaska Statute § 18.80.220(a)(1). In addressing disparate treatment claims, Alaska courts apply a three-part "pretext" framework. *See VECO, Inc. v. Rosebrock*, 970 P.2d 906, 918 (Alaska 1999).

> Under this three-part analysis, the plaintiff first must establish a prima facie case of discrimination to eliminate the most common nondiscriminatory reasons for the plaintiff's rejection. If the plaintiff succeeds, the burden of production, but not persuasion, shifts to the employer, who must articulate a legitimate, non-discriminatory reason for the employment decision. Once that occurs, the burden shifts back to the employee to prove that the employer's stated reason was a pretext for discrimination.

*ERA Aviation, Inc. v. Lindfors*, 17 P.3d 40, 44 (Alaska 2000) (quotations, punctuation, and footnotes omitted).

We have carefully reviewed the record, and have concluded that even assuming Greene has made out a prima facie case of disparate treatment, he has not produced sufficient evidence to raise a genuine issue of triable fact as to whether Kinko's stated reason for termination — low MSM scores — was a pretext for discrimination.

Greene contends that Kuhn refused his staffing and equipment requests while granting Collins's similar requests. According to Greene, this treatment undermined Greene's effectiveness as a manager and diminished his MSM scores. Greene thus contends that Clark's decision to fire him based on those scores constituted disparate treatment.

On the equipment issue, Greene points to Yaskell's testimony concerning Greene's requests for office supplies, some of which Kuhn granted and others which he denied. There is no suggestion that Collins made similar requests or that Kuhn treated any such requests more favorably. Greene also relies on his own testimony that Collins told him that Kuhn authorized Collins to receive a new computer. This testimony is inadmissible hearsay and may not be considered on review of the district court's summary judgment. *See Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980). In any event, Greene did not remember when the conversation occurred.

Greene further points to his own answers to Kinko's interrogatories, which indicate that he was denied equipment requests that Collins was granted. Although Federal Rule of Civil Procedure 56(c) generally permits us to rely on these answers, it is not apparent that they contain admissible evidence. Neither the answers nor any other evidence establish that Greene had personal knowledge of

3

Kuhn's grant or denial of Collins's equipment requests. Personal knowledge is necessary for testimony to be admissible at trial under Federal Rule of Evidence 602. *See Norita v. N. Mariana Islands*, 331 F.3d 690, 697 (9th Cir. 2003). This evidence also cannot be considered at the summary judgment stage.

Finally, at his deposition, Kuhn stated that "if [Greene] was pushing to get [a computer] before the end of a lease, then it wouldn't happen." But this testimony does not indicate that Greene in fact asked for a computer, or that Collins did the same.

The evidence on the staffing issue is likewise insufficient. Greene says that the Northern Lights branch was short-staffed. But Greene does not cite any evidence establishing that the Diamond branch did not suffer from the same problem. Indeed, he refers to Yaskell's testimony indicating that both branches were short-staffed.

Greene also identifies testimony suggesting that Kuhn allowed Collins to hire and promote employees unilaterally but did not afford Greene the same discretion. But the testimony does not indicate when this occurred or whether, and if so to what extent, it impacted any particular personnel decisions.

We may also consider whether "circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Bodett v. Coxcom,*

*Inc.*, 366 F.3d 736, 743 (9th Cir. 2004) (quotations and citation omitted). Upon careful review of the record, we have concluded that Greene has not offered sufficient evidence to allow for such an inference.

Because Greene has failed to produce a genuine issue of triable fact on his disparate treatment claim, the district court correctly awarded Kinko's a summary judgment on that claim.

## II

The district court erred, however, by awarding a summary judgment in Kinko's favor on the retaliation claim. Under Alaska law, the plaintiff establishes a prima facie case of discriminatory retaliation by showing (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the employer's action. *See Raad v. Alaska State Comm'n for Human Rights*, 86 P.3d 899, 905 (Alaska 2004). The parties agree that Greene has met the first and second parts of the test. Causation is the only issue.

Greene alleges two instances of retaliation: 1) that Kuhn administered the BOA audit after hearing of the internal complaint, resulting in a low score; and 2) that Kinko's fired him when he refused to withdraw the complaint. At the prima facie stage of a retaliation claim, the plaintiff's burden is only a "minimal" one,

*see Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005), and temporal proximity between the protected conduct and the alleged retaliatory acts can be sufficient to establish a prima facie case, *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1997) (as amended); *Raad*, 86 P.3d at 905. Kuhn administered the BOA audit less than two weeks after Greene filed his complaint, and Greene was fired within six months of informing Clark he would not withdraw his complaint. This timing will suffice to defeat summary judgment. *See Nidds*, 113 F.3d at 919.

Kinko's incorrectly argues that the audit cannot be retaliation because Greene was not fired because of it. Retaliation is not limited to the ultimate adverse employment decision and extends to any "materially adverse" employment action, viewed from the objective perspective of the reasonable employee. *Burlington N. & Sante Fe Ry., Co. v. White*, 126 S.Ct. 2405, 2415-16 (2006). Auditing Greene in a manner that resulted in a low score meets this test.

Kinko's concedes that Kuhn performed the audit because Greene had filed the complaint. Nevertheless, Kinko's asserts that this response could not have been retaliation because Kuhn did not know the complaint involved race discrimination. Kinko's can only make such an assertion by assuming that the testimony of Kuhn and Clark on the issue is true. But we may not make credibility

determinations in favor of the moving party. If the jury disbelieved Kuhn's and Clark's testimony, it could find that Kuhn knew the complaint involved racial discrimination. Greene has thus presented evidence of retaliation above and beyond the prima facie case and the district court's summary judgment on this first retaliation claim was incorrect.

Kinko's contends that Clark fired Greene because of his low MSM scores, but Greene has produced evidence of pretext with respect to this second retaliation claim. Taking Greene's testimony as true, Clark invited him to "drop the complaint" and "start over" with Kuhn as his boss. After he refused, she fired him. Clark's alleged urging that Greene stay with the company despite his MSM scores is evidence that those scores were merely a pretext for her retaliatory termination of Greene's employment after he declined to withdraw his complaint.

Kinko's argues that it had already decided to fire Greene prior to the complaint. But Clark's deposition indicates otherwise: she states that it was "the likely result" before the complaint, but that the final decision was not made until later. Greene has thus presented evidence of retaliation above and beyond the prima facie case and the district court's summary judgment on this second retaliation claim was also incorrect.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.** Each side shall bear its own costs on appeal.

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

APR 2 3 2008

by: R. Roberts
     Deputy Clerk

**FILED**

OCT 04 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

*Greene v. Federal Express*, No. 06-35715

NOONAN, Circuit Judge, concurring in part and dissenting in part:

I concur in the affirmance and dissent as to the reversal and remand. One thing happened to Greene because he filed the complaint: his work was audited. Audits were the way Kinko's achieved quality, and branch stores were routinely audited. That Greene received a low grade is not shown to have been discriminatory. For all that appears, it was his own fault that he failed to do well. His score in the July 2003 audit was not significantly lower than those of the two 2003 audits Kuhn conducted prior to the filing of the complaint.

Management attempted to reach a settlement of the complaint that would have absolved Greene of his poor performance scores while he abandoned the litigation. Management's move was irenic not retaliatory. When Greene did not accept the offer, the process of terminating him, already in progress, reached its inevitable conclusion. It's hard to believe that negotiations for settlement that fail justify an inference of retaliation.